HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SOUND SECURITY, INC., a Washington Corporation,

Plaintiffs,

v.

SONITROL CORPORATION, a Delaware Corporation, et al.

Defendant.

Civil No.: 3:08-cv-05350-RBL

ORDER DENYING MOTION FOR MODIFICATION OF PROTECTIVE ORDER

## *INTRODUCTION*

This matter comes before the Court on nonparty Sonitrol National Dealers Association's ("SNDA's") Motion to Modify the Protective Order entered by the Court on December 2, 2008. [Dkt. #22]. For the reasons set forth below, SNDA's Motion to Modify the Protective Order is DENIED. SNDA is responsible for all discovery costs incurred in compliance with Defendant's subpoenas except reasonable copying and mailing costs for which Defendant has assumed responsibility. SNDA is also responsible for the more than $26,000 in attorney's fees already incurred in document review.

## *DISCUSSION*

**A. Background**

In the underlying action, Plaintiff/franchisee Sound Security Inc. ("SSI") alleges that Defendant/franchisor Sonitrol negotiated in bad faith with SSI and its franchisee association SNDA concerning the terms of a prospective franchise agreement. [Dkt. #1]. In response, Sonitrol served deposition subpoenas on SNDA and its directors seeking information related to the franchise negotiations. The parties then filed a joint CR 37 submission asking the Court to determine the extent of production

[Dkt. #54]. The Court ordered SNDA and its directors to produce non-privileged documents while limiting any confidential commercial information to an "attorney's eyes only" Protective Order. [Dkt. #22]. SNDA now moves to modify the Protective Order to shift all discovery costs for compliance with the deposition subpoenas to Defendant Sonitrol. [Dkt. #69].[1] The issue thus before the Court is whether SNDA's status as a nonparty requires that the Defendant bear the costs associated with Defendant's discovery requests. The Court holds that it does not.

**B. The District Court has Discretion to Determine Costs**

District courts have broad discretion to determine the proper allocation of discovery costs. Fed. R. Civ. P. 26(c) authorizes courts to make 'any order which justice requires to protect a party or person from . . . undue burden or expense.'" *U.S. v. Columbia Broadcasting System, Inc.*, 666 F.2d 364, 368-69 (9th Cir. 1982). However, a determination of discovery costs involving nonparties is subject to Fed. R. Civ. P. 45, which states in pertinent part that "an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded." Fed. R. Civ. P. 45(c)(2)(B)(ii); *Columbia Broadcasting*, 666 F.2d at 368-69.

What constitutes a "significant" cost is at the discretion of the district court. SNDA seeks reimbursement of more than $26,000 in attorney's fees for review and production of SSI documents already provided to the Defendant. It also seeks more than $60,000 in fees and costs that it estimates will be necessary to comply with Defendant's remaining subpoena requests. While this amount is clearly "significant,"[2] it does not mean that the requesting party must necessarily bear the entire cost of compliance. *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001)). In fact, a nonparty may still be required to bear some or all of its discovery costs under Rule 45:

---

[1] The Court informed SNDA that recovery of such costs can be sought but it is generally not the Court's practice to award such costs.

[2] The D.C. Circuit in *Linder v. Calero-Portocarrero* had "no trouble concluding" that discovery expenses amounting to $200,000 were "significant." *Linder v. Calero-Portocarrero,* 251 F.3d 178, 182 (D.C. Cir. 2001). The Texas District Court in *Williams v. City of Dallas* held that $9,000 in discovery was significant to shift costs. *Williams v. City of Dallas,* 178 F.R.D. 103, 113 (N.D.Tex.1998)

ORDER
Page - 2

> While the drafters of new Rule 45 clearly intended to expand the protection
> for non-parties such as disinterested expert witnesses, see Advisory Committee
> Note to 1991 Amendment, there is no indication that they also intended to
> overrule prior Rule 45 case law, under which a non-party can be required to
> bear some or all of its expenses where the equities of a particular case demand
> it." *In Re Exxon Valdez*, 142 F.R.D. 380, 383 (D.D.C. 1992).

The prior case law indicates several non-exhaustive, equitable factors to be considered in nonparty cost-shifting disputes.

**1. Factors Considered when Determining Costs**

In nonparty cost-shifting cases, equitable factors considered are: "(1) whether the nonparty has an interest in the outcome of the case; (2) whether the nonparty can more readily bear its costs than the requesting party; and (3) whether the litigation is of public importance." *Linder*, 251 F.3d at 182. See also *In Re Exxon*, 142 F.R.D. at 383.[3] The Ninth Circuit has developed other factors that may be considered in apportioning discovery costs as well: "(1) the scope of the discovery; (2) the invasiveness of the request; (3) the extent to which the producing party must separate responsive information from privileged or irrelevant material; and (4) the reasonableness of the costs of production." *Columbia Broadcasting System, Inc.*, 666 F.2d 364, 372 (9th Cir. 1982). The Court now considers these factors.[4]

**2. Sonitrol's Discovery Requests are not Unreasonable**

The Court is not convinced that compliance with Defendant's discovery requests would constitute an undue burden on SNDA under Fed. R. Civ. P. 26(c). Although SNDA contends it would suffer undue financial burden if forced to shoulder all costs of compliance, it provides no concrete evidence that it

---

[3] The *Exxon* Court cites cases from different jurisdictions that have established these factors: *Pollitt v. Mobay Chem. Corp.*, 95 F.R.D. 101, 105 (S.D.Ohio 1982) (It is relevant to inquire whether the nonparty had an interest in the case); *Westinghouse Elec. Corp. v. City of Burlington*, 351 F.2d 762 (D.C.Cir.1965) and *United States v. International Business Mach. Corp.*, 62 F.R.D. 526, 529 (S.D.N.Y.1974) (whether one party can more easily bear the costs and whether the litigation is of public importance). *In Re Exxon Valdez*, 142 F.R.D. 380, 383 (D.D.C. 1992).

[4] As an initial matter, the Court notes that the outcome of this case will not have significant public importance. Although SSI does bring a claim under the Washington Consumer Protection Act, the current litigation over bad faith issues in franchisor/franchisee negotiations is of limited public importance and is not a significant factor in the Court's determination of costs.

lacks funds sufficient to comply.[5]

In addition, numerous steps are being taken to keep discovery costs reasonable. According to the Defendant, depositions of four of the six SNDA witnesses will be conducted over a two day period while the witnesses are attending a conference in Baltimore. [Dkt. #74 at 6]. This will reduce travel expenses and other costs of discovery. In addition, both sides agree that SNDA's subpoenaed members are likely to have most of the same documents that have already been reviewed by SNDA's lawyer on behalf of SSI. [Dkt. #74 at 7, Dkt. #76 at 5-6].[6] SNDA thus contends that such a review is unnecessary and duplicative. The Court disagrees. Just because the deponents "likely" have the same documents [Dkt. # 76 at 6] doesn't make it so, and a reasonable search for potential documents not previously reviewed justifies any duplicative work invariably done in the process.

SNDA argues that forcing it to pay the discovery costs is also against California public policy because it could have a general chilling effect on future volunteer participation in non-profit corporations such as itself. [Dkt. 69 at 11]. SNDA mischaracterizes its purpose and function as a non-profit corporation.[7]

**3. SNDA has a Substantial Interest in the Outcome of the Case**

Despite SNDA's repeated attempts to distance itself from the SSI litigation, SNDA has a plain interest in the outcome of the case; and its discovery costs will not be shifted to Defendant.

---

[5] SNDA states only that it has no budget for responding to the discovery requests and that forcing compliance would divert resources from SNDA's separate litigation against Sonitrol in California. [Dkt. #70, Dkt. #69 at 5, Dkt. #76 at 4-5]. SNDA offers no actual evidence to support the assertion that compliance would be an undue financial burden. This also impacts the Courts determination of the second factor developed in *Linder* (above). While Sonitrol may indeed be more able to bear the costs of discovery, SNDA, as previously stated, offers no concrete evidence in support thereto.

[6] Those SNDA members being subpoenaed for records were all on the SNDA's Contract Negotiations Committee. SNDA's lawyer has already reviewed one member's records from the Committee (3,000 documents from SSI's Jim Dopp).

[7] Although SNDA is a "non-profit" corporation, it is not, as it appears to imply, the type of organization concerned with "public service and charitable affairs of the people of California" [Dkt. 69 at 11]. SNDA is in fact a trade association and even identifies itself as such. [Dkt. #70 at 1]. SNDA's primary function is thus to advance the financial interests of its member-companies.

ORDER
Page - 4

SNDA is a trade association that works to advance the financial interests of its member companies. It promotes and represents the interests of Sonitrol franchisees and is directly funded by these companies through membership dues. The Association's Board of Directors is composed of franchisee members [Dkt. #74-2 at 10-13]. SSI's President is a past President and board member of SNDA and SSI's General Manager was previously a member of SNDA's Contract Negotiating Committee that negotiates with Sonitrol on behalf of SNDA members. [*Id*. at 10]

The SNDA also voluntarily authorized its attorney to review more than 3,000 SSI documents in response to discovery requests by Sonitrol. While SNDA has an interest in protecting its own privileged documents whether they are in SSI's possession or not, we agree with Defendant that SNDA's willingness to spend more that $26,000 on attorney's fees for discovery requests directed not to SNDA but to SSI, is indicative of SNDA's close business relationship with SSI and its interest in the outcome of these proceedings.

It has been recognized by other courts that a nonparty cannot shift its discovery costs if it has a substantial interest in the outcome of the case. In a decision involving the Exxon Oil Company, for example, the D.C. District Court noted that the outcome of the case would be of great concern to the petroleum industry generally and that the nonparty trade association, American Petroleum Institute ("API"), had an inherent interest in its outcome. *In Re Exxon,* 142 F.R.D. at 384. As such, the Court held that API was not a "pure non-party witness" necessarily protected from significant discovery expense under Rule 45. *Id.*

The outcome of this case has similar implications for nonparty SNDA and the Sonitrol franchisees it represents. While SNDA is correct that this case involves a dispute as to whether a single franchisee (SSI) can continue operating under an original franchise agreement, the case also involves allegations that Sonitrol negotiated in bad faith with SNDA on the terms of a new franchise agreement. Whether or not

Sonitrol is found to have acted in bad faith may affect its bargaining power and negotiating strategy in future negotiations. Moreover, the contractual terms, if any, that are eventually agreed upon by the parties may serve as precedent for what other franchisees can expect to receive in future negotiations with Sonitrol.

## *CONCLUSION*

It is the general inclination of this Court not to shift the costs of discovery. Having considered, amongst other things, the reasonableness of Defendant's discovery requests, SNDA's burden of compliance therewith, and SNDA's interest in the outcome of the case, SNDA's Motion to Modify the Protective Order is DENIED. Defendant has volunteered and will be responsible for reimbursing all copying and mailing costs incurred by SNDA pursuant to Defendant's subpoenas. SNDA is responsible for all other costs related to Defendant's discovery requests including the attorney's fees that it has already incurred.

IT IS SO ORDERED.

Dated this 26th of June, 2009

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE